```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

**William Carey Carlberg, Jr.**

    **v.**                                                      Case No. 08-cv-230-PB
                                                                Opinion No. 2009 DNH 068

**New Hampshire Department of
Safety, et al.**


## MEMORANDUM AND ORDER

William Carey Carlberg, Jr. alleges that he was improperly demoted from the rank of Highway Patrol and Enforcement Lieutenant to the rank of State Police Sergeant at a lower salary grade. Before the court are cross motions for summary judgment with respect to Counts II and III of Carlberg's First Amended Complaint. Count II alleges that Carlberg was wrongly demoted without due process of law by his employer, the New Hampshire Department of Safety, and its Commissioner, John J. Barthelmes. Count III alleges that defendants violated Carlberg's First Amendment right to free speech by demoting him and constructively terminating him in retaliation for his public criticisms of New Hampshire Department of Safety practices. For the reasons given below, I conclude that defendants are entitled to summary judgment on both counts.

# I. BACKGROUND

## A. Factual Background

On May 1, 2007, Carlberg, an employee of the New Hampshire Department of Safety, was deployed to active duty by the United States National Guard.  At the time of his deployment, Carlberg held the rank of Highway Patrol and Enforcement Lieutenant with the Bureau of Highway Patrol and Enforcement within the Division of Motor Vehicles at the New Hampshire Department of Safety.

While Carlberg was deployed, Barthelmes, with the approval of the Governor and the Executive Council, reorganized the Department by moving the Highway Patrol from the Division of Motor Vehicles into the Division of State Police.  A collective bargaining agreement with terms relating to departmental reorganization was in effect at the time.  (Def. Exhibit A-5, p. 29, § 19.21.)  The reorganization sought to merge the two police forces in order to improve the administration and efficiency of the Department of Safety.  This merger of the two police forces did not eliminate any classified positions, but did involve a reclassification of Highway Patrol and Enforcement Officer positions of various ranks.  Where an employee's title or salary grade was changed, the employee's annual base salary was

maintained through an adjustment in steps within the new salary grade.

Prior to this reorganization, Carlberg was a commissioned Lieutenant with the Bureau of Highway Patrol and Enforcement at salary grade 27 step 6, with an annual salary of $73,248.75 and the possibility to advance two steps to an annual salary of $79,863.77.  In addition, in 2006, Highway Patrol Enforcement Command Officers, including Carlberg, received a 2% wage enhancement.  As a result of the reorganization, Carlberg's new title became State Police Regulatory Sergeant II, a non-commissioned position at salary grade 26 in the new Bureau of Driver and Vehicle Regulation within the Division of State Police.  When Carlberg was reclassified as a Regulatory Sergeant II at salary grade 26, he was placed at step 7, with an annual salary of $73,248.75 without a 2% wage enhancement.  At salary grade 26 step 7, Carlberg had the possibility to advance one step to an annual salary of $76,428.71.  Carlberg was treated the same as the two other existing Highway Patrol Lieutenants, who were also reclassified to the new position of State Police Regulatory Sergeant II and reduced from salary grade 27 to salary grade 26 with an adjustment of steps so that base salaries would remain the same.  Employees in positions other than Highway Patrol

Lieutenants were also reclassified to positions with new titles, although not all position reclassifications were accompanied by a change in salary grade.

Carlberg received no prior notice of this reorganization and learned of this personnel action in February 2008 while he was deployed.  On May 23, 2008, Carlberg wrote Barthelmes a letter demanding that he be immediately reinstated to the rank of Lieutenant.  Barthelmes responded to Carlberg, denying his request and explaining that the personnel action was part of a reorganization of the Department of Safety.  Barthelmes further explained that "[b]ecause the ranks in grades in the much smaller Highway Patrol were inflated in comparison with the ranks and grades of officers performing similar and in may cases more complex duties in the State Police, it became necessary to adjust the rank structure so the two would be similar."  (Pl.'s Exhibit D, Doc. No. 31-6.)

**B.   Procedural Background**

Carlberg commenced this lawsuit on June 10, 2008 and filed his First Amended Complaint consisting of six counts on July 7, 2008.  Carlberg's First Amended Complaint alleges violations of his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA")(Count I), his

-4-

Fourteenth Amendment procedural due process rights (Count II), his First Amendment right to free speech (Count III), and state law (Counts IV, V, and VI).  The Court dismissed Count I on October 15, 2008 and ordered the defendants to file a summary judgment motion addressing Counts II and III.

On November 14, 2008, Carlberg filed a partial motion for summary judgment on Count II of his First Amended Complaint, claiming that he was demoted without due process.  On December 12, 2008, the defendants filed an objection to Carlberg's partial motion for summary judgment, and moved for summary judgment on Counts II and III.  Carlberg has objected to the defendants' summary judgment motion.

On May 1, 2009, Carlberg filed a Second Amended Complaint, renumbering the counts from his earlier complaints and asserting a new claim.  Count I remains an allegation of a USERRA violation. Count II remains an allegation that Carlberg was wrongfully demoted without due process.  Count III now alleges Carlberg's new claim of wrongful decommissioning in violation of his Fourteenth Amendment right to due process.  Carlberg's First Amendment claim is renumbered as Count IV, and his state law claims are renumbered as Counts V, VI, and VII.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323. The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). On cross motions for summary judgment, the standard

of review is applied to each motion separately.  See Am. Home Assur. Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III.  ANALYSIS

In Count II, Carlberg claims a violation of his Fourteenth Amendment right to procedural due process when he was allegedly wrongfully demoted.  Count III of Carlberg's First Amended Complaint (renumbered as Count IV of his Second Amended Complaint) alleges a violation of his First Amendment right to free speech in connection with an alleged adverse employment action.  I address each count in turn.

**A.   Wrongful Demotion Claim**

Pursuant to 42 U.S.C. § 1983, Carlberg alleges that he was wrongfully demoted without prior notice or a hearing in violation of his right to procedural due process.  (First Amended Compl., Doc. No. at ¶ 65.)  "To establish a procedural due process violation, a plaintiff must identify a protected liberty or property interest, and allege 'that the defendants, acting under color of state law, deprived [him] of that . . . interest without constitutionally adequate process."  Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 56 (1st Cir. 2006) (citations omitted).

-7-

Carlberg asserts a protected property interest in his continued employment at the rank of Lieutenant at salary grade 27, which cannot be altered without affording him procedural due process. He also asserts a protected liberty interest in his reputation, which he alleges was besmirched by the defendants' actions. Defendants assert that they are entitled to summary judgment on Count II because the uncontested facts demonstrate that Carlberg was not deprived of a constitutionally protected property or liberty interest.

    1.   Property Interest

To have a property interest in employment or in a specific benefit under the due process clause, an employee "must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  Thus, a claimant must demonstrate that there were "rules or mutually explicit understandings that support his claim of entitlement" to his position or benefit. Perry v. Sindermann, 408 U.S. 593, 601 (1972).  Property interests are not created by the Constitution, but "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

-8-

law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577.

Carlberg contends that his property interest in his continued employment at the rank of Lieutenant at salary grade 27 stems from a New Hampshire statute that provides:

> Any police employee may be suspended, discharged or demoted by the director for cause, with the approval of the commissioner of safety, but shall be entitled to a public hearing before discharge or demotion, but not suspension, if he so requests in writing addressed to the director not later than 10 days after notice of said discharge or demotion.

N.H. Rev. Stat. Ann. ("RSA") § 106-B:5. He argues that he has a property right in his continued employment and is entitled to the process afforded under RSA § 106-B:5 because he was demoted. He also relies on a personnel rule of the New Hampshire Public Employee Labor Relations Board ("PELRB") that defines "demotion" as "a transfer of an employee from one position to another position having a lower salary grade." N.H. Admin. R. Ann., Per 102.20.

Demotion is not defined within the governing statutory chapter and it is not clear whether the definition of demotion under the personnel rules governs the meaning of demotion under RSA § 106-B:5. See In re New Hampshire Troopers Ass'n, 145 N.H.

-9-

288, 290, 761 A.2d 486, 489 (2000) (declining to decide whether the personnel rules govern the meaning of demotion under RSA § 106-B:5 and applying a plain meaning analysis to determine that a state police's reclassification of "soft corporals" as "trooper II's" did not constitute a demotion because there was no reduction in job duties, pay, or benefits).  I need not decided whether the definition of demotion under the PELRB personnel rules governs the meaning of demotion under RSA § 106-B:5, however, because RSA § 106-B:5 only addresses the director's authority to take disciplinary action against an employee for cause.  Likewise, PELRB personnel rule 1002.07, which Carlberg also cites, addresses only disciplinary demotions.  In the present case, there is no evidence to indicate that the personnel action in question was a disciplinary action for cause.  Rather, Carlberg was treated the same as two other Highway Patrol Lieutenants as well as multiple other employees.  The evidence indicates that the personnel action was part of a merger of the entire Bureau of Highway Patrol and Enforcement into the Division of State Police.  Thus, neither RSA § 106-B:5 nor PELRB personnel rule 1002.07 apply in this circumstance.

In this case, a review of the personnel rules shows that the action taken was a reclassification that was part of a department

wide reorganization.  See N.H. Admin. R. Ann., Per 102.46 ("'Reclassification' means a determination by the director that a position be assigned to a class different from the one in which it was previously assigned").  New Hampshire state officials are authorized to change the internal administrative departmental organization of the Department of Safety, N.H. Rev. Stat. Ann. § 21-P:15, and in so doing may reclassify a state employee or otherwise alter the employee's position.  Reclassification into a position with a lower salary grade is contemplated by the personnel rules:

> If the director reallocates or reclassifies a position into a class with a lower salary grade, the incumbent's salary shall be adjusted as follows:
>
> (1) The incumbent's salary shall not be reduced for a period of 2 years;
>
> (2) If the incumbent was not at the maximum step, the incumbent shall be eligible for annual step increases at the former grade that do not exceed the maximum of the new grade, provided such increases are documented by performance evaluations;
>
> (3) After a period of 2 years, the appointing authority shall adjust the incumbent's salary downward by assigning the step in the lower salary grade in accordance with Per 901.07(a); and
> `
> (4) When the incumbent leaves the position, the appointing authority shall post the vacancy at the adjusted salary level set for the position and not at the level assigned to the employee who held the position prior to reallocation or reclassification.

-11-

N.H. Admin. R. Ann., Per. 303.06(b).  In addition, the collective bargaining agreement in effect at the time of the personnel action contemplates departmental reorganization and requires salaries to remain the same, but creates no property interest in continued employment at a particular salary grade in such an event:

> In the event of a departmental reorganization, the employer agrees to maintain a salary of each classified member of the union, unless such reorganization would result in a higher salary.  If such reorganization results in any or all members being moved to another division within the department, the employer agrees to continue using the employee's date of hire with the Department of safety as a means of determining seniority within said division.

(Def.'s Exhibit A-5, p. 29, § 19.21.)

In short, New Hampshire law draws a distinction between disciplinary personnel actions for cause and personnel actions taken in the course of departmental reorganization.  While employees have a right to a hearing when their employer proposes to demote them for cause, they have no vested right to protection from a departmental reorganization conducted in accordance with the requirements of state law.  Accordingly, once the Governor and Executive Council approved Commissioner Barthelemes' reorganization of the Department of Safety and reclassification

of employees, Carlberg possessed no entitlement to continued employment at the rank of Lieutenant at salary grade 27.  See Mandel v. Allen, 81 F.3d 478, 481-82 (4th Cir. 1996) (determining that state employees had no property interest in their employment entitling them to due process protections when they were dismissed under authority specifically granted to state officials for "nongrievable" circumstances);  Buchanan v. Little Rock School Dist., 84 F.3d 1035 (8th Cir. 1996)(determining that school principal who was reassigned to administrative post had no property interest in her status as principal where Arkansas law did not create a right to remain a principal and transfer provision provided school board authority to reassign).

Because Carlberg has not demonstrated that he had a legitimate claim of entitlement to continued employment at the rank of Lieutenant at salary grade 27, his claim that he was deprived a protected property interest without due process of law when he was wrongfully demoted fails as a matter of law.

2.   Liberty Interest

Carlberg asserts a deprivation of a reputation-based liberty interest, claiming that the defendants' actions "negatively impacted [his] good name, his honor, and [his] reputation, and subjected [him] to embarrassment" from having his peers think

-13-

that he was demoted.  (Pl.'s Mot. for Partial Summ. J., Doc. No. 31 at ¶ 31.)  "A public employer's action may deprive an employee of a constitutionally protected liberty interest in his or her reputation" under certain circumstances.  Dasey v. Anderson, 304 F.3d 148, 155 (1st Cir. 2002).  The First Circuit has determined that

> the Fourteenth Amendment procedurally protects reputation only where (1) government action threatens it, (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected.  Moreover, the municipality terminating the employee must also be responsible for the dissemination of defamatory charges, in a formal setting (and not merely as the result of unauthorized "leaks"), and thereby significantly have interfered with the employee's ability to find future employment.

Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997)(citations and internal quotations omitted).

In the present case, Carlberg was neither fired nor demoted. Rather, Carlberg's position within the Department of Safety, along with the positions of a number of other employees, was reclassified in order to improve the administration and efficiency of the Department.  The reclassification resulted in a change of title and salary grade for Carlberg, but the evidence does not demonstrate that the reclassification reflected poorly on Carlberg's reputation.  He was treated the same as two other

Highway Patrol Lieutenants and numerous other Highway Patrol Officers.  Further, there is no evidence that his reclassification was a disciplinary action.

More importantly, there is no evidence that the defendants disseminated any negative or defamatory information about Carlberg or the reasons for his reclassification.  All the documents presented to the court indicate that the personnel action was a reclassification that was not personal to Carlberg, and nothing suggests any defamatory disclosures by the defendants.  Absent dissemination of defamatory information about Carlberg by the defendants or harm to his reputation, Carlberg has no protected liberty interest or constitutional right to name-clearing hearing.

Because Carlberg did not present any evidence of conduct by the defendants that would constitute a deprivation of a constitutionally protected property or liberty interest without due process of law, his claim fails and defendants are entitled to summary judgment on Count II.

**B.   First Amendment Claim**

Carlberg alleges that the he was "demoted and effectively constructively terminated in retaliation for his public criticisms of New Hampshire Department of Safety practices."

(First Amended Cmplt., Doc. No. 11 at ¶ 72.)  Defendants assert that they are entitled to summary judgment on Count III (now renumbered as Count IV) because there is no evidence to support Carlberg's claim that an adverse employment action was taken against him in retaliation for his public criticism of Department of Safety practices.

"Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citing Connick v. Myers, 461 U.S. 138, 142 (1983)).  "[A] State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech[.]"  Aponte-Torres, 445 F.3d at 56 (quoting Rankin v. McPherson, 483 U.S. 378, 383 (1987)).  However, an individual's First Amendment rights are not absolute and in order for a public employee's speech to be protected by the First Amendment, the employee must make a prima facie showing that (1) he spoke as a citizen on a matter of public concern; (2) his interest in the speech outweighed any countervailing government interest in promoting the efficient performance of the service provided by its employees; and (3) the protected speech was a substantial or motivating factor in an adverse employment decision.  Torres-

Rosado v. Rotger-Sabat, 335 F.3d 1, 11 (1st Cir. 2003).  If the court finds that the employee has made a prima facie showing, then the burden shifts to the defendants to show by a preponderance of the evidence that the governmental agency would have taken the same action "even in the absence of the protected conduct."  Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

In the present case, the parties debate whether an adverse employment action was taken against Carlberg.  Actions including dismissals, demotions, denials of promotions, and transfers can constitute adverse employment actions.  Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir. 2008).  In addition, actions that result in the loss of supervisory positions, additional duties, and opportunities for additional pay can constitute adverse employment actions.  Id.  Further, a constructive discharge can constitute an adverse employment action.  Constructive discharge may consist of "harassment so severe and oppressive that staying on the job while seeking redress-the rule save in exceptional cases-is 'intolerable.'"  Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 33 (1st Cir. 2003)(quoting Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 9-10 (1st Cir. 2001)).  "To prove constructive discharge, a plaintiff must usually show that [his] working

conditions were so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.  The standard is an objective one; an employee's subjective perceptions do not govern."  Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003)(internal quotations and citations omitted).

I need not decide whether the personnel action in question constitutes an adverse employment action in this case, however, because Carlberg has offered no evidence to show that his speech was a substantial or motivating factor in his change of position. All of the evidence presented indicates that Carlberg was neither a target of any disciplinary action nor treated any differently than other Highway Patrol and Enforcement officers. Specifically, Carlberg was treated the same as all three Lieutenants in the Highway Patrol when his position was reclassified as part of a department wide reorganization.  While Carlberg need not produce a "smoking gun" to carry his initial burden that his speech was a substantial or motivating factor in the personnel action, he must adduce some evidence suggesting that his speech played a role in the personnel action.  See Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003).  Carlberg, however, has produced no evidence to demonstrate that his speech

-18-

was a substantial or motivating factor in the personnel action. Nor has Carlberg produced any evidence to demonstrate that actions were taken against him personally and that his reclassification was not a part of a department wide reorganization.[1]

In sum, Carlberg has failed to rebut defendants' contention that he has not made a prima facie showing that he was reclassified in retaliation for public criticisms of the Department of Safety.  Thus, the defendants are entitled to summary judgment on Count III (now renumbered as Count IV).

---

[1] Federal Rule of Civil Procedure 56(f) provides that if a party opposing a motion shows by affidavit that, for specified reasons, its cannot present facts essential to justify its opposition, a court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue an other just order.  To the extent that Carlberg claims that summary judgment would be premature because he has not been able to obtain evidence to support his allegations, he has not complied with Rule 56(f).  See Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir. 2007)(To invoke Rule 56(f), a party must submit an affidavit or other document showing (i) good cause for his inability to have discovered the necessary facts; (ii) a plausible basis for believing that additional facts probably exists and can be retrieved within a reasonable time; and (iii) an explanation of how those facts will be material to his opposition); Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 127-28 (1st Cir. 2006).
   Carlberg has not given any reasons why he cannot present facts needed to oppose the defendants' summary judgment motion.  Therefore, this is not a valid reason to deny summary judgment.

**IV.   CONCLUSION**

For the foregoing reasons, I deny Carlberg's partial motion for summary judgment (Doc. No. 31).  I grant the defendants' motion for partial summary judgment with respect to Carlberg's claim of wrongful demotion without due process of law (Count II) and Carlberg's claim that the defendants violated his First Amendment right to free speech (Count III, renumbered as Count IV in Carlberg's Second Amended Complaint) (Doc. No. 35).

The parties are directed to file motions for summary judgment with respect to Carlberg's new claim of wrongful decommissioning without due process of law (Count III in Carlberg's Second Amended Complaint) within ten days of this order.  Objections shall be filed within ten days of the filing of summary judgment motions.  No reply memoranda shall be filed.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 12, 2009

cc:   William Carey Carlberg, Jr.
      Laura E.B. Lombardi, Esq.
      Glenn R. Milner, Esq.
      James W. Donchess, Esq.