UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**William Carey Carlberg, Jr.**

    **v.**                               Case No. 08-cv-230-PB
                                            Opinion No. 2009 DNH 126

**New Hampshire Department of
Safety, et al.**

**MEMORANDUM AND ORDER**

William Carey Carlberg, Jr. alleges that he was wrongfully decommissioned and demoted from the rank of Highway Patrol and Enforcement Lieutenant to the rank of State Police Sergeant. Before the court are cross motions for summary judgment with respect to Count III of Carlberg's Second Amended Complaint alleging that Carlberg was wrongfully decommissioned without due process of law by his employer, the New Hampshire Department of Safety, and its Commissioner, John J. Barthelmes. For the reasons given below, I conclude that defendants are entitled to summary judgment.

**I. BACKGROUND**

**A.**   **Factual Background**

On May 1, 2007, Carlberg, an employee of the New Hampshire Department of Safety, was deployed to active duty by the United

States National Guard.  At the time of his deployment, Carlberg held the rank of Highway Patrol and Enforcement Lieutenant with the Bureau of Highway Patrol and Enforcement within the Division of Motor Vehicles at the New Hampshire Department of Safety.

While Carlberg was deployed, Barthelmes, with the approval of the Governor and the Executive Council, reorganized the Department by moving the Highway Patrol from the Division of Motor Vehicles into the Division of State Police.  A collective bargaining agreement with terms relating to departmental reorganization was in effect at the time.  (Defs.' Exhibit A-1, p. 29, § 19.21, Doc. No. 55-4.)  The reorganization sought to merge the two police forces in order to improve the administration and efficiency of the Department of Safety.  This merger of the two police forces did not eliminate any classified positions, but did involve a reclassification of Highway Patrol and Enforcement Officer positions of various ranks.  Where an employee's title or salary grade was changed, the employee's annual base salary was maintained through an adjustment in steps within the new salary grade.

Prior to this reorganization, Carlberg was a commissioned Lieutenant with the Bureau of Highway Patrol and Enforcement at salary grade 27 step 6, with an annual salary of $73,248.75 and

the possibility to advance two steps to an annual salary of $79,863.77.  In addition, in 2006, Highway Patrol Enforcement Command Officers, including Carlberg, received a 2% wage enhancement.  As a result of the reorganization, Carlberg's new title became State Police Regulatory Sergeant II at salary grade 26 in the new Bureau of Driver and Vehicle Regulation within the Division of State Police.  When Carlberg was reclassified as a Regulatory Sergeant II at salary grade 26, he was placed at step 7, with an annual salary of $73,248.75 without a 2% wage enhancement.  At salary grade 26 step 7, Carlberg had the possibility to advance one step to an annual salary of $76,428.71.  Carlberg contends that he was also decommissioned to a non-commissioned status.  The defendants contend that Carlberg was not decommissioned; rather his rank was changed due to reorganization in the Department of Safety.  (Barthelmes Affidavit, Defs.' Exhibit A at ¶ 9, Doc. No. 55-3.)

   Carlberg was treated the same as the two other existing Highway Patrol Lieutenants, who were also reclassified to the new position of State Police Regulatory Sergeant II and reduced from salary grade 27 to salary grade 26 with an adjustment of steps so that base salaries would remain the same.  Employees in positions other than Highway Patrol Lieutenants were also reclassified to

positions with new titles, although not all position reclassifications were accompanied by a change in salary grade.

Carlberg received no prior notice of this reorganization and learned of this personnel action in February 2008 while he was deployed. On May 23, 2008, Carlberg wrote Barthelmes a letter demanding that he be immediately reinstated to the rank of Lieutenant. Barthelmes responded to Carlberg, denying his request and explaining that the personnel action was part of a reorganization of the Department of Safety. Barthelmes further explained that "[b]ecause the ranks in grades in the much smaller Highway Patrol were inflated in comparison with the ranks and grades of officers performing similar and in may cases more complex duties in the State Police, it became necessary to adjust the rank structure so the two would be similar." (May 29, 2008 Letter, Pl.'s Exhibit D, Doc. No. 31-6.)

B.  **Procedural Background**

Carlberg commenced this lawsuit on June 10, 2008 and filed his First Amended Complaint consisting of six counts on July 7, 2008.[1] Carlberg's First Amended Complaint alleged violations of

---

[1] The defendants named by Carlberg included the New Hampshire Department of Safety, John Barthelmes, individually and in his official capacity as Commissioner of the New Hampshire Department of Safety, Kelly Ayotte, individually and in her official capacity as Attorney General of the State of New

his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA")(Count I), his Fourteenth Amendment procedural due process rights (Count II), his First Amendment right to free speech (Count III), and state law (Counts IV, V, and VI).[2]  The Court dismissed Count I on October 15, 2008 and ordered the defendants to file a summary judgment motion addressing Counts II and III of the First Amended Complaint.[3]

On November 14, 2008, Carlberg filed a partial motion for summary judgment on Count II of his First Amended Complaint,

---

Hampshire, Louis Copponi, individually and in his official capacity as an Officer of the New Hampshire Department of Safety, the Honorable Kenneth McHugh, in his official capacity as a Justice of the New Hampshire Superior Court, and John Does 1 through 10.

[2] Carlberg's state law claims include discrimination under New Hampshire RSA Chapters 97 and 115-B, interference with his freedom of expression as guaranteed by New Hampshire RSA Chapter 98-E, and tortious constructive discharge in violation of public policy.

[3] The Court dismissed Carlberg's USERRA claims against the Department of Safety and the state defendants in their official capacities without prejudice.  (October 15, 2008 Order, Doc. No. 29).  The Court also dismissed Carlberg's USERRA claims against the individual defendants in their individual capacities for failure to state a claim.  In addition, the Court dismissed all claims against Superior Court Judge Kenneth McHugh and Attorney General Ayotte for failure to state a claim.  (Id.)  Further, on April 7, 2009 the Court granted Louis Copponi's Motion for Summary Judgment on all counts in Carlberg's First Amended Complaint. (April 7, 2009 Margin Order.)

claiming that he was demoted without due process. On December 12, 2008, the defendants filed an objection to Carlberg's partial motion for summary judgment, and moved for summary judgment on Counts II and III. Carlberg objected to the defendants' summary judgment motion.

On May 1, 2009, Carlberg filed a Second Amended Complaint, renumbering the counts from his earlier complaints and asserting a new claim. Count I remains an allegation of a USERRA violation. Count II remains an allegation that Carlberg was wrongfully demoted without due process. Count III alleges Carlberg's new claim of wrongful decommissioning in violation of his Fourteenth Amendment right to due process. Carlberg's First Amendment claim is renumbered as Count IV, and his state law claims are renumbered as Counts V, VI, and VII.

On May 12, 2009, I issued an order denying Carlberg's motion for partial summary judgment and granting the defendants' motion for partial summary judgment with respect to Carlberg's claim of wrongful demotion without due process of law (Count II) and his claim that the defendants violated his First Amendment right to free speech (Count III, renumbered as Count IV in Carlberg's Second Amended Complaint). I directed the parties to file motions for summary judgment with respect to Carlberg's new claim

of wrongful decommissioning without due process of law (Count III in Carlberg's Second Amended Complaint).

Before the court are the parties' cross motions for summary judgment with respect to Carlberg's wrongful decommissioning claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001)(citations omitted).

A party seeking summary judgment must first identify the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion

must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323. The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). On cross motions for summary judgment, the standard of review is applied to each motion separately. See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III. ANALYSIS

Pursuant to 42 U.S.C. § 1983, Carlberg alleges that he was wrongfully decommissioned without prior notice or a hearing in violation of his right to procedural due process. (Second Amended Compl., Doc. No. 51 at ¶ 78.) "To establish a procedural due process violation, a plaintiff must identify a protected liberty or property interest, and allege 'that the defendants, acting under color of state law, deprived [him] of that . . . interest without constitutionally adequate process.'" Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 56 (1st Cir. 2006) (internal citation omitted). Carlberg asserts a protected property interest in his continued employment as a commissioned

Lieutenant at salary grade 27, which cannot be altered without affording him procedural due process.  He also asserts a protected liberty interest in his reputation, which he alleges was besmirched by the defendants' actions.  Defendants assert that they are entitled to summary judgment on Count III because the uncontested facts demonstrate that Carlberg was not deprived of a constitutionally protected property or liberty interest.

   1.   Property Interest

To have a property interest in employment or in a specific benefit under the due process clause, an employee "must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  Thus, a claimant must demonstrate that there were "rules or mutually explicit understandings that support his claim of entitlement" to his position or benefit. Perry v. Sindermann, 408 U.S. 593, 601 (1972).  Property interests are not created by the Constitution, but "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that

support claims of entitlement to those benefits." Roth, 408 U.S. at 577.

Carlberg cites no laws or regulations that explicitly mention or define decommissioning to argue that he has a property interest in his commission. Rather, Carlberg contends that his property interest in his continued employment as a commissioned Lieutenant stems from a New Hampshire statute that provides:

> Any police employee may be suspended, discharged or demoted by the director for cause, with the approval of the commissioner of safety, but shall be entitled to a public hearing before discharge or demotion, but not suspension, if he so requests in writing addressed to the director not later than 10 days after notice of said discharge or demotion.

N.H. Rev. Stat. Ann. ("RSA") § 106-B:5. Although decommissioning is not mentioned in this statute, Carlberg argues that he has a property right in his continued employment as a commissioned officer and is entitled to the process afforded under RSA § 106-B:5 because "to decommission an officer is to per se demote the officer." (Obj. to Defs.' Mot. for Summ. J., Doc. No. 63, at 10 ¶ 39.) He also relies on a personnel rule of the New Hampshire Public Employee Labor Relations Board ("PELRB") that defines "demotion" as "a transfer of an employee from one position to another position having a lower salary grade." N.H. Admin. R. Ann., Per 102.20. Thus, Carlberg argues that: he is entitled to

-10-

due process before a demotion; a decommissioning is a per se demotion; and it follows that he is entitled to due process before a decommissioning.

Carlberg's reliance on RSA § 106-B:5 and his contention that the decommissioning of an officer is equivalent to demotion makes his wrongful decommissioning argument nearly identical to the argument I previously rejected when granting summary judgment for the defendants on Carlberg's wrongful demotion claim. I reiterate here why Carlberg's argument is unsuccessful and elaborate on my analysis to address Carlberg's claim that my prior decision was incorrect.

Demotion is not defined within the governing statutory chapter and it is not clear whether the definition of demotion under the personnel rules governs the meaning of demotion under RSA § 106-B:5. See In re New Hampshire Troopers Ass'n, 145 N.H. 288, 290, 761 A.2d 486, 489 (2000) (declining to decide whether the personnel rules govern the meaning of demotion under RSA § 106-B:5 and applying a plain meaning analysis to determine that a state police's reclassification of "soft corporals" as "trooper II's" did not constitute a demotion because there was no reduction in job duties, pay, or benefits). I need not decide whether the definition of demotion under the PELRB personnel

rules governs the meaning of demotion under RSA § 106-B:5, however, because RSA § 106-B:5 only addresses the director's authority to take disciplinary action against an employee for cause. Carlberg contends that RSA § 106-B:5 does not specify that a demotion must result from discipline and he argues that the "cause" in this case to bring the action under the statute's purview was Barthelmes' conclusion that an adjustment of the rank structure was necessary. The term "for cause", however, plainly means an action taken because of breach, misfeasance, or other inappropriate action of the other party. Thus, RSA § 106-B:5 addresses only demotion for disciplinary reasons and Barthelmes' conclusion that an adjustment of the rank structure was necessary is not the sort of cause contemplated by the statute. Likewise, PELRB personnel rule 1002.07, which Carlberg also cites, addresses only disciplinary demotions.[4]

---

[4] Carlberg also relies on the First Circuit's opinion in Bergeron v. Cabral, 560 F.3d 1 (1st Cir. 2009), to argue that decommissioning is an "adverse employment action mandating constitutional due process protections." (Pl.'S Mot. for Summ. J., Doc. No. 59 at 10 ¶ 38.) This case, however, does not further Carlberg's argument. In Bergeron, the First Circuit held that because only jail officers who were commissioned deputy sheriffs had opportunities to work paid security details, when the plaintiff jail officers were stripped of their commissions, they suffered an adverse employment action because their job responsibilities were constricted and their earning capacity was effectively reduced. 560 F.3d at 9-10. The court held that the the defendant was not entitled to qualified immunity because no

In the present case, there is no evidence to indicate that the personnel action in question was a disciplinary action for cause. Rather, Carlberg was treated the same as two other Highway Patrol Lieutenants as well as multiple other employees. The evidence indicates that the personnel action was part of a merger of the entire Bureau of Highway Patrol and Enforcement into the Division of State Police. Thus, neither RSA § 106-B:5 nor PELRB personnel rule 1002.07 apply in this circumstance. The fact that a departmental reorganization could have taken place without any changes in title or rank, does not change this analysis because there is no evidence that the changes were made for disciplinary reasons.

A review of the personnel rules shows that the action taken by the defendants in this case was a reclassification that was

---

reasonable public official could have thought that they she could take such an adverse employment action against the plaintiffs because of their political affiliations and exercise of First Amendment rights in that context. Id. at 13.

In the present case, however, I previously granted the defendants summary judgment on Carlberg's First Amendment claim because Carlberg had offered no evidence to show that his speech was a substantial or motivating factor in his change of position. (May 12, 2009 Order, Doc. No. 53.) Further, whether Carlberg suffered an adverse employment action is not the relevant question in a wrongful decommissioning claim. Even if Carlberg's alleged decommissioning was attended by the loss of other benefits and thus constituted an adverse employment action, that does not mean that Carlberg had a constitutionally protected property interest in his commission.

part of a department wide reorganization.  See N.H. Admin. R. Ann., Per 102.46 ("'Reclassification' means a determination by the director that a position be assigned to a class different from the one in which it was previously assigned").  New Hampshire state officials are authorized to change the internal administrative departmental organization of the Department of Safety, N.H. Rev. Stat. Ann. § 21-P:15, and in so doing may reclassify a state employee or otherwise alter the employee's position.  Reclassification into a position with a lower salary grade is contemplated by the personnel rules:

> If the director reallocates or reclassifies a position into a class with a lower salary grade, the incumbent's salary shall be adjusted as follows:
>
> (1) The incumbent's salary shall not be reduced for a period of 2 years;
>
> (2) If the incumbent was not at the maximum step, the incumbent shall be eligible for annual step increases at the former grade that do not exceed the maximum of the new grade, provided such increases are documented by performance evaluations;
>
> (3) After a period of 2 years, the appointing authority shall adjust the incumbent's salary downward by assigning the step in the lower salary grade in accordance with Per 901.07(a); and
>
> (4) When the incumbent leaves the position, the appointing authority shall post the vacancy at the adjusted salary level set for the position and not at the level assigned to the employee who held the position prior to reallocation or reclassification.

N.H. Admin. R. Ann., Per. 303.06(b).  In addition, the collective bargaining agreement in effect at the time of the personnel action contemplates departmental reorganization and requires salaries to remain the same, but creates no property interest in continued employment at a particular salary grade or rank in such an event:

> In the event of a departmental reorganization, the employer agrees to maintain the salary of each classified member of the union, unless such reorganization would result in a higher salary.  If such reorganization results in any or all members being moved to another division within the department, the employer agrees to continue using the employee's date of hire with the Department of safety as a means of determining seniority within said division.

(Defs.' Exhibit A-1, p. 29, § 19.21, Doc. No. 55-4.)

In short, New Hampshire law draws a distinction between disciplinary personnel actions for cause and personnel actions taken in the course of departmental reorganization.  While employees have a right to a hearing when their employer proposes to demote them for cause, they have no vested right to protection from a departmental reorganization conducted in accordance with the requirements of state law.  Accordingly, once the Governor and Executive Council approved Commissioner Barthelemes' reorganization of the Department of Safety and reclassification of employees, Carlberg possessed no entitlement to continued

employment as a commissioned Lieutenant at salary grade 27. See Mandel v. Allen, 81 F.3d 478, 481-82 (4th Cir. 1996) (determining that state employees had no property interest in their employment entitling them to due process protections when they were dismissed under authority specifically granted to state officials for "nongrievable" circumstances); Buchanan v. Little Rock School Dist., 84 F.3d 1035 (8th Cir. 1996)(determining that school principal who was reassigned to administrative post had no property interest in her status as principal where Arkansas law did not create a right to remain a principal and transfer provision provided school board authority to reassign).

Because Carlberg has not demonstrated that he had a legitimate claim of entitlement to continued employment as a commissioned Lieutenant at salary grade 27, his claim that he was deprived a protected property interest without due process of law when he was wrongfully decommissioned fails as a matter of law.

2. Liberty Interest

Carlberg asserts a deprivation of a reputation-based liberty interest, claiming that the defendants' actions "negatively impacted [his] good name, his honor, and [his] reputation, and subjected [him] to embarrassment" from having his peers think that he was decommissioned and demoted. (Pl.'s Mot. for Partial

Summ. J., Doc. No. 59 at ¶ 31.)  "A public employer's action may deprive an employee of a constitutionally protected liberty interest in his or her reputation" under certain circumstances. Dasey v. Anderson, 304 F.3d 148, 155 (1st Cir. 2002).  The First Circuit has determined that

> the Fourteenth Amendment procedurally protects reputation only where (1) government action threatens it, (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected.  Moreover, the municipality terminating the employee must also be responsible for the dissemination of defamatory charges, in a formal setting (and not merely as the result of unauthorized "leaks"), and thereby significantly have interfered with the employee's ability to find future employment.

Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997)(citations and internal quotations omitted).

In the present case, Carlberg's position within the Department of Safety, along with the positions of a number of other employees, was reclassified in order to improve the administration and efficiency of the Department.  The reclassification resulted in a change of title, rank, and salary grade for Carlberg, but the evidence does not demonstrate that the reclassification reflected poorly on Carlberg's reputation. Although the departmental reorganization did not effect every transferred officer's title, rank, and salary grade, Carlberg was treated the same as two other Highway Patrol Lieutenants and

-17-

numerous other Highway Patrol Officers.  Further, there is no evidence that his reclassification was a disciplinary action.

More importantly, there is no evidence that the defendants disseminated any negative or defamatory information about Carlberg or the reasons for his reclassification.  All the documents presented to the court indicate that the personnel action was a reclassification that was not personal to Carlberg, and nothing suggests any defamatory disclosures by the defendants.  Absent dissemination of defamatory information about Carlberg by the defendants or harm to his reputation, Carlberg has no protected liberty interest or constitutional right to name-clearing hearing.

Because Carlberg did not present any evidence of conduct by the defendants that would constitute a deprivation of a constitutionally protected property or liberty interest without due process of law, his claim fails and defendants are entitled to summary judgment on Count III of Carlberg's Second Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, I deny Carlberg's partial motion for summary judgment (Doc. No. 59).  I grant the defendants'

partial motion for summary judgment on Carlberg's claim of wrongful decommissioning (Doc. No. 55).  This Order and my previous Orders have resolved all of Carlberg's federal claims. In addition, I have dismissed all of Carlberg's state law claims against former Attorney General Kelly Ayotte and Superior Court Judge Kenneth McHugh, and have granted summary judgment to Louis Copponi on Carlberg's state law claims.  Carlberg's remaining claims are state law claims against the New Hampshire Department of Safety and its Commissioner, John Barthelmes.  I decline to exercise supplemental jurisdiction over Carlberg's remaining state law claims.  Accordingly, I dismiss those claims without prejudice.  The clerk is directed to enter judgment and close the case in accordance with this Memorandum and Order.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 27, 2009

cc:  William Carey Carlberg, Jr.
     Laura E.B. Lombardi, Esq.
     Glenn R. Milner, Esq.
     James W. Donchess, Esq.